# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

KAVIN MAURICE RHODES,

                              Plaintiff,

        v.

M. ROBINSON, et al.,

                              Defendants.

_____/

CASE NO. 1:02-CV-5018-AWI DLB-P

FINDINGS AND RECOMMENDATIONS
RECOMMENDING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT BE GRANTED
IN PART AND DENIED IN PART

(Docs. 75 and 84)

## A.    Relevant Procedural History

Plaintiff is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's second amended complaint, lodged on May 20, 2006 and filed pursuant to the Court's Order, on September 8, 2006.

On May 11, 2006, defendants Robinson, Blevins, Nelson, Pazo, Robertson, Tidwell, Lopez and Huebner filed a motion for summary judgment as to plaintiff's first amended complaint filed on March 13, 2002. On September 8, 2006, the Court granted plaintiff's motion for leave to file the second amended complaint and ordered defendants to advise whether they wished to waive response to the second amended complaint and proceed with their motion for summary judgment, or respond to the second amended complaint and withdraw their motion. On September 21, 2006, defendants elected to waive response to the second amended complaint and proceed with their motion for summary judgment. However, in doing so, defendants requested that the court sua sponte conduct

1

a preliminary screening of the second amended complaint to determine whether plaintiff exhausted his administrative remedies as to the new claims and defendants in the second amendment complaint.

Plaintiff's first amended complaint is based several incidents occurring between May 3, 2001 and September 11, 2001, which he alleges were in retaliation for a grievance he submitted against defendant Robinson on November 15, 2000.  In the second amended complaint, plaintiff adds 24 additional defendants based on events occurring between January 2, 2002 through November 15, 2003 (Claims Thirteen through Thirty-Three).  The additional allegations describe alleged retaliation for filing this lawsuit.

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a).   Exhaustion must occur prior to filing suit. McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Plaintiff may not exhaust while the suit is pending.  McKinney, 311 F.3d at 1199-1201.  Plaintiff may not exhaust while the suit is pending and then seek leave to amend to add the now-exhausted claims, as such a course of action serves to thwart the requirement that exhaustion occur prior to filing suit.  See McKinney, 311 F.3d at 1199-1201.

Plaintiff admittedly did not exhaust his administrative remedies regarding the new claims and allegations until after filing this action.  Although plaintiff did not file the proposed second amended complaint to the court until March 30, 2006, the suit itself was initially filed on January 4, 2002.  The actions plaintiff complains of in Claims Thirteen through Thirty-Three of the second amended complaint were allegedly taken in retaliation for filing this lawsuit.  Consequently, any exhaustion of these claims necessarily occurred after the filing of this action.

The Court therefore RECOMMENDS that Claims Thirteen through Thirty-Three of the second amended complaint be dismissed without prejudice for failure to exhaust administrative remedies.

The Court will therefore address defendants motion for summary judgment of Claims One

2

through Twelve of the second amended complaint.  Plaintiff filed an opposition to defendants'

motion for summary judgment on June 5, 2006.[1]

### B.    Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue

as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(c).  Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions on
> file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It is the moving party's burden to establish that

there exists no genuine issue of material fact and that the moving party is entitled to judgment as a

matter of law.  British Airways Board v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978).

"When the moving party does not have the burden of proof on the issue, he need show only

that the opponent cannot sustain his burden at trial."  Calderone v. United States, 799 F.2d 254, 259

(6th Cir. 1986) (quoting from W. Schwarzer, Summary Judgment Under the Federal Rules: Defining

Issues of Material Fact 99 F.R.D. 465, 487 (1984)).  "But where the moving party has the burden -

the plaintiff on a claim for relief or the defendant on an affirmative defense - his showing must be

sufficient for the court to hold that no reasonable trier of fact could find other than for the moving

party."  Id.  Thus, as to plaintiff's motion for summary judgment, plaintiff must demonstrate there

is no triable issue as to the matters alleged in his complaint.  Id.  This requires plaintiff to establish

beyond controversy every essential element of his retaliation claims.  Fontenot v. Upjohn Co., 780

F.2d 1190, 1194 (5th Cir. 1986).  Plaintiff's evidence is judged by the same standard of proof

applicable at trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue,

a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions,

---

[1]The caption of plaintiff's Statement of Disputed Facts states, "Plaintiff's Statement of Disputed Facts and
Motion for Cross-Summary Judgment."  However, plaintiff does not address his cross motion for summary judgment
in his pleadings.  The Court therefore disregards the caption to the extent it indicates that plaintiff moves for cross
motion for summary judgment.

3

answers to interrogatories, and admissions on file.'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Id</u>. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id</u>.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id</u>. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions,

4

answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, <u>Matsushita</u>, 475 U.S. at 587 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

**C.**   **Defendants' Cross-Motion for Summary Judgment**

**1.**   **Statement of Undisputed Facts**

1.   At the time of the events alleged in the complaint, plaintiff was an inmate confined at the California Correctional Institution (CCI) at Tehachapi, California. Second Amended Complaint, ¶1.

2.   Correctional Officer M. Robinson has been a Receiving and Release (R&R) Officer at CCI since December 1994. Robinson Decl. ¶¶ 1-3.

3.   Plaintiff was issued a Cannon Typewriter, #8114, by Sergeant Barker on July 18, 1994. Robinson Decl. ¶4.

4.   On September 15, 1994, Sergeant Barker mailed the typewriter out for repair. Robinson Decl. ¶4.

5.   Officer Robinson's first contact with plaintiff's typewriter was February 7, 1995, when he reissued it to plaintiff after its return from repair. Robinson Decl. ¶5.

6.   Officer Robinson also mailed the typewriter out for repair on February 16, 1995 and reissued it to Rhodes on April 10, 1995. Robinson Decl. ¶6.

7.   Officer Robinson mailed the typewriter out for repair on July 10, 1995 and reissued it to

1    Rhodes on August 30, 1995.  Robinson Decl. ¶7.

2    8.    Officer Robinson was responsible for handling R&R property issues for inmates who were

3          unassigned (i.e., not working), or who worked on weekends and had days off between

4          Monday and Friday.  Robinson Decl. ¶8.

5    9.    Other R&R officers handled property issues for inmates who had Saturdays and Sundays off.

6          Officer Robinson was responsible for handling plaintiff's R&R property issues up until

7          January 1998 when he was reassigned a job with Saturdays and Sundays off.  Robinson Decl.

8          ¶9.

9    10.   Officer Robinson had no involvement with plaintiff's typewriter property issues between

10         January 1998 and the May 3, 2001 incident.  Robinson Decl. ¶10.

11   11.   Any delays plaintiff experienced in getting his typewriter repaired and delivered to him were

12         out of Officer Robinson's responsibility and control after January 1998.

13   12.   Sergeant Singer handled all of plaintiff's typewriter repair issues between January 3, 2000

14         and December 11, 2000.  Robinson Decl. ¶12.

15   13.   On April 30, 2001, Sergeant Blevins was assigned to R&R.  Because this was a new

16         assignment for Sergeant Blevins, Officer Robinson was temporarily coming in early to help

17         handle some of the R&R property issues normally handled by Sergeant Blevins' shift.

18         Robinson Decl. ¶13.

19   14.   Officer Robinson handled plaintiff's typewriter property issues on May 3, 2001, only because

20         Officer Robinson was helping with property issues on Sergeant Blevins' shift while Sergeant

21         Blevins became familiar with his new duties.  Robinson Decl. ¶13, Blevins Decl. ¶ 3.

22   15.   Officer Robinson had no further involvement with plaintiff's typewriter property issues after

23         May 3, 2001.  Robinson Decl. ¶13, Blevins Decl. ¶ 4.

24   16.   The December 11, 2000, repair was invoiced by AF Office Systems, Inc. and shipped to CCI

25         on April 18, 2001.  Robinson Decl. ¶14.

26   17.   On May 3, 2001, Officer Robinson called plaintiff to R&R to reissue his typewriter.

27         Robinson Decl. ¶15.

28   18.   Prior to issuing the typewriter, Officer Robinson reviewed plaintiff's property card and found

that he was in possession of three appliances, a TV, CD player, and typewriter.  Robinson Decl. ¶15.

19. Pursuant to regulations, inmates were allowed to possess two appliances.  Robinson Decl. ¶17.

20. Officer Robinson's responsibilities as an R&R Officer include enforcing the property rules and regulations.  These property regulations are explained in a directive issued by the Deputy Director of Institutions.  Robinson Decl. ¶18.

21. After reviewing plaintiff's property card, Officer Robinson informed him of the policy and told him if he wanted his typewriter, he would have to turn in either his television or CD player.  Rhodes became upset.  Robinson Decl. ¶19.

22. Robinson contends plaintiff then informed him that he no longer had a CD player.  Robinson Decl. ¶20.

23. Officer Robinson contends he contacted plaintiff's housing unit officer and requested a cell search to determine whether plaintiff had a CD player in his possession.  Robinson Decl. ¶21.

24. On May 3, 2001, Officer Nelson confiscated and forwarded to R&R an altered CD player.  Robinson Decl. ¶22, Nelson Decl. ¶¶ 3-5.

25. Officer Nelson's responsibilities as a housing unit floor officer include enforcing property rules and regulations.  These rules and regulations do not permit in-cell possession of altered property because it is considered contraband.  Nelson Decl. ¶8.

26. Plaintiff's property card listed an Optimus CD player, #5035, issued on July 18, 1994 and an Optimus CD player #12A5, issued on September 20, 1996.  Robinson Decl. ¶23.

27. Defendants contend the CD player found in plaintiff's cell was a Sony Discman ESP2 that had been altered to look like an Optimus brand player.  Robinson Decl. ¶24, Nelson Decl. ¶ 9.

28. Defendants state that the alteration consisted of the original owner's name and number having been scraped or sanded off; Rhodes name and number was melted into the back of the CD player and formed with dots rather than etched on as is done in R&R; and a plastic Optimus logo glued on to a CD player otherwise marked as a Sony Discman ESP2, model

1    D-F411, which was first produced in 1998.  Robinson Decl. ¶25, Nelson Decl. ¶ 10.

2    29.    The CD player having been confiscated as contraband, plaintiff was informed that he would
3           be issued his typewriter because he only possessed one other appliance, a television.
4           Robinson Decl. ¶26.

5    30.    Defendants contend that none of plaintiff's property was damaged while under the control
6           of R&R.  Robinson Decl. ¶27, Blevins Decl. ¶ 5.

7    31.    Officers Robinson and Sergeant Blevins contend they did not damage any of Rhodes'
8           property.  Robinson Decl. ¶27, Blevins Decl. ¶5.

9    32.    Neither Officer Robinson nor Sergeant Blevins observed any one else damage any of
10          Rhodes' property.  Robinson Decl. ¶27, Blevins Decl. ¶5.

11   33.    To the knowledge of both Officer Robinson and Sergeant Blevins, Rhodes' property was
12          issued to him promptly and without delay.  Robinson Decl. ¶28, Blevins Decl. ¶8.

13   34.    Neither Officer Robinson nor Sergeant Blevins delayed the issuance of property to Rhodes.
14          Robinson Decl. ¶28, Blevins Decl. ¶8.

15   35.    Neither Officer Robinson nor Sergeant Blevins observed anyone else delaying the issuance
16          of Rhodes' property.  Robinson Decl. ¶28, Blevins Decl. ¶8.

17   36.    On November 15, 2000, plaintiff submitted an inmate appeal, Log No. CCI-4-00-02601,
18          claiming that he was experiencing unnecessary delays in receiving his personal typewriter
19          from R&R after having it sent to an outside vendor for repair.  Huebner Decl. ¶ 4.

20   37.    Defendants contend that on May 3, 2001, Officers Robinson and Nelson, Sergeant Blevins
21          and Captain Lopez were all unaware that Rhodes had submitted an inmate appeal on
22          November 15, 2000.  Robinson Decl. ¶29, Blevins Decl. ¶9, Nelson Decl. ¶ 6, Lopez Decl.
23          ¶ 11.

24   38.    Officer Robinson was not named in the inmate appeal Rhodes submitted on November 15,
25          2000.  Robinson Decl. ¶30, Huebner Decl. ¶4.

26   39.    Officers Robinson and Nelson and Sergeant Blevins allege they became aware of the
27          November 2000 inmate appeal only after the submission of the June 14, 2001, inmate appeal.
28          Robinson Decl. ¶30, Blevins Decl. ¶10, Nelson Decl. ¶ 7.

40.     Sergeant Blevins mailed out Rhodes' typewriter for repairs, at Rhodes' request, on June 4, 2001.  On June 6, 2001, Sergeant Blevins confiscated eleven compact discs and one laser lens cleaner because Rhodes did not have a CD player.  Operational Procedure #206 provides that in order for an inmate to possess cassette tapes or CD's, he must own a player.  Blevins Decl. ¶6, 11, Robinson Decl., Attach. 1 at 24.

41.     The typewriter was returned to Rhodes on March 6, 2002, at which time Rhodes tested the typewriter in Sergeant Blevins' presence and found it to be in working order.  Blevins Decl. ¶7, Robinson Decl., Attach. 1 at 25.

42.     Defendant Huebner, now a Correctional Lieutenant, was the Litigation Coordinator at CCI during the relevant time period.  Huebner Decl. ¶ 1.

43.     Sometime after Sergeant Blevins' posting to R&R, inmate Rhodes complained to Lieutenant Huebner that Officer Robinson and Sergeant Blevins were holding his typewriter and not issuing it to him.  Prior to this conversation, Lieutenant Huebner contends he was unaware that Rhodes had filed an inmate appeal in November 2000, claiming unnecessary delays in receiving his personal typewriter from R&R.  Huebner Decl. ¶¶ 8-9.

44.     As Litigation Coordinator, Lieutenant Huebner alleges he had no responsibility for processing Rhodes' inmate appeals; however, he was familiar with the inmate appeals process and record keeping.  Huebner Decl. ¶ 3.

45.     Lieutenant Huebner reviewed inmate Rhodes' property card and discovered that his typewriter was an older model that had been sent out numerous times for repair and reissued to him when it was returned to the institution.  Huebner Decl. ¶ 10.

46.     Lieutenant Huebner also reviewed Rhodes' inmate appeals, Log No. CCI-4-00-02601, submitted November 15, 2000: Log No. CCI-4-01-01549, submitted May 7, 2001; Log No. CCI-4-01-01927, submitted June 14, 2001; and Log No. CCI-4-02-00284, submitted January 5, 2002.  Huebner Decl. ¶¶ 4-7.

47.     Lieutenant Huebner was satisfied that each grievance was promptly investigated and responded to on their merits.  Huebner Decl. ¶11.

48.     Defendant Lopez, now retired, dealt with Rhodes' property issues in his capacity as either

Facility Captain or an Acting Associate warden of CCI.  Lopez Decl. ¶¶ 1-2.

49.  As Facility Captain it was Captain Lopez' practice to talk to inmates all of the time, so, he does not deny that he spoke with inmate Rhodes.  Lopez Decl. ¶3.

50.  Captain Lopez' usual practice would be to listen to the inmate, and then ask him to write out his issues and send it to him.  Lopez Decl. ¶4.

51.  The Rhodes' letter dated May 3, 2001, concerning his property was typical of the inmate letters Captain Lopez received.  Lopez Decl. ¶ 5.

52.  Upon receipt of such a letter, Captain Lopez would assess the issues and have designated staff respond if feasible.  Lopez Decl. ¶ 6.

53.  However, in this instance, the allegations in Rhodes' letter were substantially the same as set forth in his inmate appeal dated May 7, 2001, Log No. CCI-4-01-01549.  Lopez Decl. ¶ 7, Huebner Decl. Attach. 2.

54.  Accordingly, Captain Lopez considered it appropriate to rely on the inmate appeal responses to reply to Rhodes property issues.  Lopez Decl. ¶ 8.

55.  Sergeant Blevins prepared the first level response to this grievance and Captain Lopez signed off on the response on June 14, 2001.  Lopez Decl. ¶ 9, Huebner Decl. Attach. 2.

56.  On June 14, 2001, Rhodes submitted another inmate appeal concerning his property issues, Log CCI-4-01-01927.  As acting Associate Warden, Lopez responded at the second level on August 7, 2001.  Lopez Decl. ¶ 10, Huebner Decl. Attach. 3.

57.  Prior to May 3, 2001, Captain Lopez contends he was unaware that Rhodes had filed an inmate appeal in November 2000, claiming unnecessary delays in receiving his personal typewriter from R&R after having it sent to an outside vendor for repair.  Lopez Decl. ¶ 11.

58.  Captain Lopez contends his responses to Rhodes' inmate appeals were based on the facts and were not influenced by Rhodes' having submitted inmate appeals.  Lopez Decl. ¶ 12.

59.  Defendant Robertson was at the time of the September 11, 2001 incident, a Correctional Sergeant at CCI.  Officers Tidwell and Pazo were search and escort officers at CCI building IV-A.  Robertson Decl. ¶ 1, Tidwell Decl. ¶ 1, Pazo Decl. ¶ 1.

60.  On September 11, 2001, inmate Rhodes was assigned as the Security Housing Unit (SHU)

1    law library clerk.  Robertson Decl. ¶ 3.

2    61.   Rhodes lived in the general population and was escorted to and from the SHU.  Robertson

3          Decl. ¶ 3.

4    62.   Defendants contend Rhodes was suspected of smuggling kites and other contraband between

5          the general population and the SHU inmates.  Robertson  Decl. ¶ 4.

6    63.   An inmate is subject to inspection of his person, either clothed or unclothed, as a routine

7          requirement for inmate movement into and out of high security risk areas, such as the SHU.

8          Robertson Decl. ¶ 5, Tidwell Decl. ¶ 6, Pazo Decl. ¶ 6.

9    64.   Whenever possible, unclothed body inspections of inmates are to be conducted outside the

10         view of others.  Robertson Decl. ¶ 7, Tidwell Decl. ¶7, Pazo Decl. ¶ 7.

11   65.   On the morning of September 11, 2001, Sergeant Robertson directed Correctional Officers

12         Tidwell and Pazo, who were working the chapel work check point, to perform an unclothed

13         search of inmate Rhodes prior to escorting him to the SHU.  Robertson Decl. ¶ 7, Tidwell

14         Decl. ¶ 3-4, Pazo Decl. ¶ 3-4.

15   65.   Defendants contend Officer Tidwell performed the search, with Sergeant Robertson and

16         Officer Pazo observing, in a private area of the chapel, in a professional manner according

17         to policy and procedure and without incident.  Robertson Decl. ¶ 8, Tidwell Decl. ¶ 5, Pazo

18         Decl. ¶ 5.

19   66.   Defendants deny that Rhodes subjected to demeaning or harassing conduct by officers

20         Tidwell and Pazo.  Robertson Decl. ¶ 9, Tidwell Decl. ¶ 8, Pazo Decl. ¶ 8.

21   67.   Defendants contend that at the time of the September 11, 2001 search, Sergeant Robertson

22         and Officers Tidwell and Pazo were unaware that Rhodes had filed an inmate appeal in

23         November 2000, claiming that he was experiencing unnecessary delays in receiving his

24         personal typewriter from R&R after having it sent to an outside vendor for repair.  Robertson

25         Decl. ¶ 10, Tidwell Decl. ¶ 9, Pazo Decl. ¶ 9.

26   68.   To their knowledge, Sergeant Robertson and Officers Tidwell and Pazo were unaware of

27         Rhodes' property claims prior to the commencement of this action.  Robertson Decl. ¶ 11,

28         Tidwell Decl. ¶ 10, Pazo Decl. ¶ 10.

69.    On May 7, 2001, Rhodes submitted an inmate appeal, Log No. CCI-4-01-01549, "to redress the retaliations" against him.  First Am. Compl. ¶ 21.

70.    On May 7, 2001, Rhodes had another inmate hand a copy of the May 7th appeal to the Ombudsman.  First Am. Compl ¶ 23.

71.    Rhodes subsequently wrote to the CDCR Ombudsman "trying to discover the whereabouts" of the May 7th appeal.  First Am. Compl. ¶ 24.

72.    Rhodes filed a complaint with the Kern County Grand Jury describing efforts by Officer Robinson and the CDCR Ombudsman "to avoid having to tender a response" to the May 7th appeal.  First Am. Comp. ¶ 26.

73.    Rhodes then approached Lieutenant Huebner in an effort to have Robinson issue his typewriter.  First Am. Compl. ¶ 30.

74.    Rhodes sought out Captain Lopez and "verbally described the entire saga of events complained of" in his complaint.  First Am. Compl. ¶ 32.

75.    At Captain Lopez' direction, Rhodes reduced his story to writing and forwarded it to Lopez. First Am. Compl. ¶ 33.

76.    On May 25, 2001, Rhodes complained, to Lieutenant Huebner about Officer Robinson's and Sergeant Blevins' further retaliation against him for the submission of inmate appeals.  First Am. Compl. ¶ 37.

77.    On June 7, 2001, Rhodes received the first level response to the May 7th appeal and, not satisfied with the result, advanced his appeal to the second level.  First Am. Compl. Ex. 1.

78.    On June 14, 2001, Rhodes submitted an inmate appeal, Log No. CCI-4-01-01927, complaining about the retaliatory confiscation of his CD player.  Huebner Decl. Attach. 3.

79.    On June 26, 2001, Rhodes requested an interview with Captain Lopez concerning his problem with Officer Robinson.  First Am. Compl. ¶ 34.

80.    On July 2, 2001, Rhodes filed an additional complaint with the Kern County Grand Jury complaint about "the dissemination of false evidence to the grand jury" by Officer Robinson and the CDCR Ombudsman.  First Am. Compl. ¶ 49.

81.    On July 16, 2001, Rhodes received the second level responses to his May 7th appeal and,

1    not satisfied, he submitted his appeal to the third level where it was again denied.  First
2    Am. Compl. Ex. 1.
3    82.   On January 5, 2002, Rhodes submitted an inmate appeal, Log No. CCI-4-02-00284,
4          complaining about the retaliatory unclothed body search on September 11, 2001.
5          Huebner Decl. Attach. 4.
6    83.   Rhodes filed a claim with the Board of Control.  First Am. Compl. Ex. 1.
7    84.   Rhodes filed his original complaint in this action on January 4, 2002, and filed his first
8          amended complaint on March 13, 2002.  Clerk's Record 1, 12.

9                    **2.**   **Discussion**

10        An allegation of retaliation against a prisoner's First Amendment right to file a prison

11   grievance is sufficient to support claim under section 1983.  Bruce v. Ylst, 351 F.3d 1283, 1288

12   (9th Cir. 2003).  "Within the prison context, a viable claim of First Amendment retaliation entails

13   five basic elements:  (1) An assertion that a state actor took some adverse action against an

14   inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the

15   inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a

16   legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559 (9th Cir. 2005).  The court

17   must "'afford appropriate deference and flexibility' to prison officials in the evaluation of

18   proffered legitimate penological reasons for conduct alleged to be retaliatory."  Pratt v. Rowland,

19   65 F.3d 802, 807 (9th Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)).  The

20   burden is on plaintiff to demonstrate "that there were no legitimate correctional purposes

21   motivating the actions he complains of."  Pratt, 65 F.3d at 808.

22        Defendants do not dispute that plaintiff's November 15, 2000 inmate appeal was a

23   protected activity.  However, they argue that plaintiff cannot present any evidence to satisfy the

24   other required elements for a retaliation claim.  As to the alleged delays in returning plaintiff's

25   typewriter, the destruction of his typewriter and the refusal to process his inmate appeals,

26   defendants contend the alleged actions were not adverse.  As to the confiscation of plaintiff's CD

27   player, compact discs and laser lens cleaner and the unclothed body search, defendants contend

28   their actions advanced legitimate correctional goals.  Defendants also contend that plaintiff has

13

not shown that any of the defendants were even aware of his protected activity (i.e., the grievances) nor that defendants' conduct chilled his First Amendment rights.

### a.   Absence of Adverse Action

### (1)   Destruction of Typewriter - Claim Eight

Plaintiff alleges that his typewriter was completely destroyed while in R&R between May 3, 2001 and June 6, 2001 in retaliation for plaintiff's grievances.  2d. Am Compl. ¶ 149.

Defendants contend that Sergeant Blevins mailed out the typewriter for repairs, at plaintiff's request, on June 4, 2001.  DUF 40.  Defendants contend that the typewriter was returned to plaintiff on March 6, 2002 at which time plaintiff tested it in Sergeant Blevins' presence and found it to be in working order.  DUF 41.

Plaintiff does not dispute that the typewriter was sent out on June 4, 2001 for repairs. However, plaintiff contends that it had to be sent out because defendants destroyed it while the typewriter was in their possession from May 3, 2001 through June 4, 2001.  Doc 85, Rhodes' Decl. ¶¶ 31-33.  Plaintiff contends he was therefore required to send it out for repair and he did not receive it back until March 6, 2002.  *Id*.  Plaintiff contends he was required to pay $393.10 to have the typewriter repaired.  Rhodes' Decl. ¶ 33.

Plaintiff has submitted evidence sufficient to create a disputed issue of fact concerning whether defendants destroyed his typewriter in retaliation for the November 15, 2000 grievance.

### (2)   Refusal to Process or Respond to Inmate Appeals - Claims Six and Nine.

Plaintiff claims that defendant Lopez refused to respond to his appeals and refused to return plaintiff's documentary evidence in retaliation for plaintiff's grievances.  2d. Am. Compl. ¶145.  Plaintiff claims that defendant Huebner refused to process his appeals in retaliation for his grievances against Robinson and Blevins.  2d. Am. Compl.  ¶ 151.

Defendants contend that failing to respond to plaintiff's letter was not an adverse action by Lopez.  Defendant Lopez contends the allegations in plaintiff's letter were substantially the same as set forth in his inmate appeal dated May 7, 2001, Log No. CCI-4-01-01549.  DUF 53. Defendant Lopez considered it appropriate to rely on the inmate appeal responses to reply to plaintiff's typewriter issues.  DUF 54.  Sergeant Blevins prepared the first level response to this

14

grievance and Captain Lopez signed off on the response on June 14, 2001.  DUF 55.  On June 14,

2001, plaintiff submitted another inmate appeal concerning his property issues, Log No. CCI-4-

01-01927.  As Acting Associate Warden, Lopez responded at the second level on August 7,

2001.  DUF 56.

Defendants further contend that defendant Huebner had no responsibility for processing

plaintiff's appeals and therefore to the extent any of his appeals were not processed, defendant

Huebner could not have caused the alleged constitutional deprivation.  DUF 44.

Plaintiff does not dispute that defendant Lopez responded to the identified appeals but

instead argues that the retaliatory conduct he complains of is Lopez' failure to return his

documentary evidence as requested.  Plaintiff's Disputed Facts, Fact Nos. 51-55.  The

documentary evidence plaintiff refers to is a copy of the November 15, 2000 grievance.  *Id.*

Assuming Lopez failed to return the documentary evidence, this conduct is not adverse in that

defendants do not dispute the November 15, 2000 grievance nor do they dispute that the filing of

this grievance was protected activity.  DUF 36, Defendants' Motion for Summary Judgment, 5:

12-13.  Plaintiff has therefore failed to meet his burden of establishing a genuine issue of material

fact as to Claim Six against defendant Lopez.  Even assuming defendant Lopez failed to return

the documentary evidence as requested, this conduct was not an adverse action sufficient to

support a retaliation claim.

As to Claim Nine against defendant Huebner, plaintiff contends that on May 22, 2001, he

handed defendant Huebner a copy of his appeal, as a protective measure.  Rhodes Dec. ¶ 40.

Plaintiff cites to a response to his letter to Warden Yarborough, which states, "If you have further

questions in this regard, please contact H. Huebner, Litigation Coordinator."  Rhodes Dec. ¶ 40,

Att. 1 at 68.  Plaintiff therefore argues that "according to Warden Yarborough, it was Huebner's

responsibility to process declarants grievances."  Rhodes Dec. ¶ 40.

Plaintiff has failed to meet his burden of establishing a genuine issues of material facts as

to Claim Nine against defendant Huebner.  Even assuming defendant did not process the appeal

handed to him on May 22, 2001, plaintiff admits that he did so only as a "protective measure."

Plaintiff does not dispute that Appeal 01-1549, filed May 7, 2001 was processed through the

1    Director's Level.  *See* Rhodes Decl., Att. 1 at 91.  Accordingly, Huebner alleged failure to

2    process a copy of the appeal was not an adverse action sufficient to support a retaliation claim.

3        **b.    Advancement of Legitimate Correctional Goals**

4        **(1)    Confiscation of CD Player - Claim One**

5            Plaintiff alleges that defendant Robinson's actions on May 3, 2001 in forcing him to

6    choose between his CD player and his television, and further instructing defendant Nelson to

7    confiscate his CD player, were taken in retaliation for his November 15, 2000 grievance.

8            Defendant Robinson's position is that prison regulations allow inmates to possess only

9    two appliances.  DUF 19.  Robinson requested that Nelson perform a cell search to confirm

10   whether plaintiff had a CD player.  DUF 23.  Nelson found and confiscated what appeared to him

11   to be an altered CD player.  DUF 24.  Altered property is considered contraband which inmates

12   are not permitted to possess.  DUF 25.

13           Plaintiff argues that defendants' actions did not serve any legitimate penological purpose.

14   Plaintiff contends that defendant Robinson had never before enforced the regulation or required

15   him to send anything home in order to have his typewriter and that defendant Robinson only did

16   so on May 3, 2001 due to his inmate grievance.  Doc 85, Rhodes' Decl. ¶¶ 14-17.  Plaintiff

17   further contends that the CD player confiscated by Nelson had not been altered and that

18   defendants never made the claim that it was altered until after he submitted his appeal relating to

19   the May, 2001 incident.  Doc 85, Rhodes' Decl. ¶¶ 18-22.

20           Plaintiff has submitted evidence sufficient to create a disputed issue of fact concerning

21   whether the confiscation of his CD player resulted from a rules violation because the player had

22   been altered or whether he was set up in retaliation for the November 15, 2000 grievance.

23       **(2)    Confiscation of Compact Discs and Laser Lens Cleaner- Claim Two**

24           Plaintiff next claims that defendant Blevins' actions on June 6, 2001 in confiscating

25   twelve compact discs and a laser lens cleaner were taken in retaliation for the "group appeal"

26   submitted on May 7, 2001 against Robinson.

27           Defendants contend that Operation Procedure #206 provides that in order for an inmate to

28   possess cassette tapes or CD's, he must own a player.  DUF 40.  Defendant argues that once

plaintiff 's altered CD player had been confiscated, he no longer was in possession of a CD player and therefore in confiscating the discs and lense cleaner, he was merely enforcing a property rule and regulation, which is a legitimate correctional goal.

The court finds that defendant has met his initial burden of informing the court of the basis for his motion, and identifying those portions of the record which he believes demonstrate the absence of a genuine issue of material fact.  The burden therefore shifts to plaintiff to establish that a genuine issue as to any material fact actually does exist. See  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Plaintiff bears the burden of proving "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.  In his opposition, plaintiff does not dispute the regulation defendant was enforcing, he instead argues that defendant Blevins did not give him the required choices of how to dispose of the confiscated property.  This is not the claim Plaintiff makes in his second amended complaint where he contends that the confiscation of the property was retaliatory.  What regulations defendant did or did not follow with respect to the disposal of the property are irrelevant to the issue of whether defendant initially confiscated the property to advance a legitimate correctional goal.   It is not enough for plaintiff to proffer an alternate theory of retaliation in his opposition.  Plaintiff must submit evidence that the action complained of did not reasonably advance a legitimate correctional goal.  Plaintiff has not done so.

### (3)   Unclothed Body Search- Claim Eleven

Plaintiff alleges that on September 11, 2001, he was subjected to a demeaning and abusive strip search by defendants Tidwell, Pazo and Robertson in retaliation for his submission of grievances against defendant Robinson. 2d. Am. Compl. ¶ 155.  Plaintiff alleges that during the search, defendants broke his watch. *Id.*

Defendants submit that an inmate is subject to inspection of his person, whether clothed or unclothed, as a routine requirement for inmate movement into and out of high security risk areas, such as the SHU.  DUF 63.  Whenever possible, unclothed body inspections of inmates are to be conducted outside the view of others.  DUF 64.  Defendants contend that at this time,

1   plaintiff was assigned as the SHU law library clerk and was escorted to and from the SHU

2   because he lived in general population.  DUF 60-61.  Defendants contend that plaintiff was

3   suspected of smuggling kites and other contraband between the general population and the SHU

4   inmates and consequently, on the morning of September 11, 2001, Sergeant Robertson directed

5   Officers Tidwell and Pazo to perform an unclothed search of plaintiff prior to his entering the

6   SHU.  DUF 65.  Defendants contend the search was conducted in a professional manner, without

7   incident and at no time was plaintiff subjected to demeaning or harassing conduct.  DUF 65-66.

8   　　　Plaintiff disputes defendants' characterization of the search and disputes that he was

9   suspected of smuggling kites.  Doc 85, Rhodes' Decl. ¶¶ 53-54.  Plaintiff contends he was never

10  advised of such charges.  Plaintiff's Statement of Disputed Facts, ¶ 62.  He states that prior to his

11  submission of the grievance on November 15, 2000, he was considered a model prisoner and one

12  of only two inmates trusted to work in the SHU.  *Id.*

13  　　　Plaintiff has submitted evidence sufficient to create a disputed issue of fact concerning

14  whether the unclothed search of plaintiff resulted from a suspicion that he was smuggling kites or

15  whether he was set up in retaliation for the November 15, 2000 grievance and further whether

16  defendants demeaned and/or harassed plaintiff during the search.

17  　　　　　c.    **Adverse Action Motivated by Protected Activity**

18  　　　Defendants next argue that plaintiff has not shown that any of the defendants were even

19  aware of the November 15, 2000 grievance at the time of the actions alleged above.  Defendants

20  Robinson, Nelson and Blevins submit their own declarations wherein they assert that on May 3,

21  2001, they were all unaware that plaintiff had submitted an inmate appeal on November 15, 2000

22  and they only became aware of the November 2000 appeal after the submission of the June 14,

23  2001 appeal.  DUF 37, 39.  Defendant Huebner states that prior to defendant Blevins posting to

24  R&R, he was unaware of the November 2000 appeal, as was defendant Lopez.  DUF 43, 57.

25  Further, at the time of the September 11, 2001 search, defendants Robertson, Tidwell and Pazo

26  contend they were unaware of the November 2000 appeal.  DUF 67.

27  　　　Plaintiff contends he had a conversation about the November 2000 grievance with

28  defendant Robinson on December 11, 2000.  Plaintiff's Opposition to Defendant's Motion for

18

Summary Judgment, p. 17:18-19.  Plaintiff does not dispute that defendant Nelson may not have known about the November 2000 grievance on May 3, 2001.  Plaintiff points out that defendant Blevins knew of his May 7, 2001 grievance when he confiscated plaintiff's property on June 6, 2001 because defendant Blevins provided the informal response to the appeal.  Rhodes Dec. ¶ 57. Plaintiff also contends that defendant Lopez was aware of the November 2000 grievance on May 3, 2001 based on plaintiff's conversations with him and a letter written to him.  *See* Plaintiff's Statement of Disputed Facts No. 57, Rhodes Dec., Att. 1, p. 65, 69.  Plaintiff states at the time of the September 11, 2001 search, defendant Tidwell, Pazo and Robertson were aware of the May 7, 2001 grievance as evidenced by their June/July 2001 training video where they address some of the issues covered by the grievance.  *See* Plaintiff's Statement of Disputed Facts No. 67, Rhodes Dec. ¶ 48, Springfield Declration, ¶ 10.

A plaintiff asserting a retaliation claim must demonstrate a "but-for" causal nexus between the alleged retaliation and plaintiff's protected activity (i.e., filing a legal action). McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979); see Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977).  The prisoner must submit evidence, either direct or circumstantial, to establish a link between the exercise of constitutional rights and the allegedly retaliatory action.  Pratt, 65 F.3d at 806.  Timing of the events surrounding the alleged retaliation may constitute circumstantial evidence of retaliatory intent.  See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1316 (9th Cir. 1989).

Plaintiff has submitted evidence sufficient to create a disputed issue of fact concerning whether defendants Robinson, Blevins, Lopez, Tidwell, Pazo and Robertson were aware of the prior grievances at the time of their allegedly retaliatory conduct.  Plaintiff has failed to demonstrate that, but for his inmate grievances, defendant Nelson would not have confiscated his CD player as directed by defendant Robinson.

### d.    Absence of Chilling Effect on Rhodes' First Amendment Rights

Defendants argue that plaintiff was not deterred or silenced by defendants' actions and therefore plaintiff's exercise of his First Amendment rights has never been chilled.  Citing Rhodes v. Robinson, 408 F.3d 559, 567-568 (9th Cir.2005), defendant argue that a cognizable

retaliation claim under § 1983 requires plaintiff to show that he was injured by the retaliation and that nature of the injury must be that defendants' conduct chilled his exercise of his First Amendment rights.

Defendants note that plaintiff filed a grievance on May 7, 2001, shortly after the first allegedly retaliatory conduct on May 3, 2001 and thereafter continued to process his appeal until it was denied at the third level.  DUF 69, 74-81.  Plaintiff filed a complaint with the Kern County Grand Jury describing efforts by Officer Robinson and the CDCR Ombudsman "to avoid having to tender a response" to the May 7 appeal (DUF 72) and on July 2, 2001, plaintiff filed an additional complaint with the Kern County Grand Jury complaining about "the dissemination of false evidence to the grand jury" by Officer Robinson and the CDCR Ombudsman.  DUF 80.  On January 5, 2002, plaintiff filed an inmate appeal complaining about the retaliatory unclothed body search on September 11, 2001.  DUF 82.  Plaintiff filed a Board of Control claim and thereafter filed this action on January 4, 2002.  DUF 83, 84.

That plaintiff was not deterred or silenced by defendants actions does not defeat his retaliation claim.  In the opinion remanding this case, the Ninth Circuit held that "speech can be chilled even when not completely silenced."  Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir.2005).  The inmate need not demonstrate that his speech was actually inhibited or suppressed.  Id. at 569 (quoting Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir.1999)(where the court explained that the proper inquiry asks whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.")).  As the Ninth Circuit panel in Rhodes  made clear, to hold otherwise would present the prisoner with a "Catch 22" situation.  Rhodes, 408 F.3d 559.  The Court also noted, "harm that is more than minimal will almost always have a chilling effect."  Id at 568.

Defendants take the position that plaintiff's continued efforts, after the alleged conduct, establish that he was not deterred or silenced by defendants' actions and therefore his exercise of First Amendment rights was never chilled and they are entitled to judgment as a matter of law.  This is a misapplication of the law as announced by the Ninth Circuit in Rhodes.  As noted, the lack of actual chill does not end the inquiry.  Any significant harm suffered as a result of

1   retaliation on account of protected conduct remains actionable regardless of actual chill.  Indeed,

2   in this case, the Ninth Circuit stated, "We think our case law is abundantly clear that the

3   infliction of harms other than a total chilling effect can establish liability for such conduct, and

4   there can be serious doubt that the harms allegedly visited upon Rhodes in response to his

5   exercise of First Amendment rights went well beyond any marginal chilling of his rights."

6   Rhodes 408 F.3d at 570-571.  Defendants' motion on this ground, must therefore be denied.

7       E.      Conclusion

8       Based on the foregoing, it is HEREBY RECOMMENDED that:

9       1.      Claims Thirteen through Thirty-Three of plaintiff's second amended complaint be

10              dismissed without prejudiced for failure to exhaust administrative remedies;

11      2.      Defendants' motion for summary judgment, filed May 11, 2006, be GRANTED

12              IN PART AND DENIED IN PART as follows:

13              a.      Defendants' motion for summary adjudication on plaintiff's First Claim

14                      for retaliation against defendant Robinson, Eighth Claim for retaliation

15                      against defendants Robinson and Blevins, Eleventh Claim for retaliation

16                      against defendants Tidwell, Pazo and Robertson, be DENIED;

17              b.      Defendants' motion for summary adjudication on plaintiff's First Claim

18                      for retaliation against defendant Nelson, Second Claim for retaliation

19                      against defendant Blevins, Sixth Claim for retaliation against defendant

20                      Lopez and Ninth Claim for retaliation against defendant Huebner, be

21                      GRANTED; and

22      3.      This case proceed on plaintiff's First Claim for retaliation against defendant

23              Robinson,  Eighth Claim for retaliation against defendants Robinson and Blevins

24              and Eleventh Claim for retaliation against defendants Tidwell, Pazo and

25              Robertson as well as plaintiff's Third, Fourth, Fifth, Seventh, Tenth and Twelfth

26              Claims for retaliation which were not specifically addressed in defendants'

27              motion.

28      These Findings and Recommendations will be submitted to the United States District

1   Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

2   **twenty(20) days** after being served with these Findings and Recommendations, the parties may

3   file written objections with the court.  The document should be captioned "Objections to

4   Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file

5   objections within the specified time may waive the right to appeal the District Court's order.

6   Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

7
        IT IS SO ORDERED.
8
        **Dated:   February 9, 2007**              /s/ **Dennis L. Beck**
9   3b142a                                    UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28