1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

8

KAVIN M. RHODES,                                   CASE NO. 1:02-CV-05018-LJO-DLB PC

9                           Plaintiff,              FINDINGS AND RECOMMENDATIONS
                                                    RECOMMENDING DEFENDANTS'
10        v.                                        MOTION TO DISMISS BE GRANTED IN
                                                    PART AND DENIED IN PART AND
11   M. ROBINSON, et al.,                           CERTAIN CLAIMS AND DEFENDANTS BE
                                                    DISMISSED
12                          Defendants.
                                                    (DOC. 240)
13
                                                    OBJECTIONS, IF ANY, DUE WITHIN
14   _____/            THIRTY DAYS

15

16                            **Findings And Recommendations**

17   **I.    Background**

18          Plaintiff Kavin M. Rhodes ("Plaintiff") is a prisoner in the custody of the California

19   Department of Corrections and Rehabilitation ("CDCR").  Plaintiff is proceeding pro se and in

20   forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  On March 20, 2006,

21   Plaintiff filed a second amended complaint.  Doc. 89.  On February 12, 2007, the undersigned

22   recommended that Plaintiff's claims thirteen through thirty-three, which occurred between

23   January 2, 2002 through November 15, 2003, should be dismissed without prejudice for failure

24   to exhaust administrative remedies. Doc. 94.  On March 9, 2007, the District Judge adopted the

25   Findings and Recommendations and dismissed claims thirteen through thirty-three of Plaintiff's

26   second amended complaint without prejudice for failure to exhaust administrative remedies.  Doc.

27   97.  Plaintiff appealed the Court's order on April 4, 2007.  Doc. 103. On September 8, 2010, the

28   United States Court of Appeals for the Ninth Circuit issued a published decision, reversing the

                                              1

1   Court's order and remanding for further proceedings.  Doc. 212.

2   On March 10, 2011, the Court granted Plaintiff leave to file a third amended complaint, in

3   effect a supplemental complaint.  Doc. 224.  On June 9, 2011, Plaintiff filed his third amended

4   complaint.  Doc. 239.

5   Prior to the Court screening Plaintiff's third amended complaint pursuant to 28 U.S.C. §

6   1915A, on June 24, 2011, Defendants Blevins, Huebner, A. Lopez, Sara Malone, C. Nelson, V.

7   Pazo, Robertson, M. Robinson, and J. Tidwell filed a motion to dismiss pursuant to Rule

8   12(b)(6) of the Federal Rules of Civil Procedure.  Doc. 240.   On August 23, 2011, Plaintiff filed

9   his opposition.  Doc. 245.  No reply was filed.  The matter is submitted pursuant to Local Rule

10   230(l).  The Court will now screen Plaintiff's third amended complaint and consider Defendants'

11   arguments raised in their motion to dismiss.

12   **II.**   **Screening**

13   A.   **Legal Standard**

14   The Court is required to screen complaints brought by prisoners seeking relief against a

15   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

16   Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

17   legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

18   that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C.

19   § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been

20   paid, the court shall dismiss the case at any time if the court determines that . . . the action or

21   appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. §

22   1915(e)(2)(B)(ii).

23   A complaint must contain "a short and plain statement of the claim showing that the

24   pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

25   required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

26   conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing

27   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual

28   matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Id.* (quoting *Twombly*,

2

1   550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. *Id.*

2       **B.    Summary Of Third Amended Complaint ("TAC")**

3       Plaintiff makes the following allegations in his third amended complaint. Counts One

4   through Thirteen concern events that occurred at California Correctional Institution ("CCI"), in

5   Tehachapi, California.

6                   **1.    Count One**

7       On December 26, 2001, Plaintiff placed in the mail a civil rights complaint concerning

8   this action. TAC 2. Plaintiff named as Defendants M. Robinson, R. Blevins, V. Pazo, J.

9   Tidwell, and A. Lopez, among others. *Id.* On January 2, 2002, Defendants Pazo, R. Wenneker,

10  and Tidwell approached Plaintiff. *Id.* Defendant Tidwell stated that he knew Plaintiff had filed a

11  lawsuit. *Id.* Plaintiff feared for his safety and denied filing one. *Id.* Defendant Tidwell

12  attempted to intimidate Plaintiff into turning over a copy of his complaint, which Plaintiff

13  continued to deny being filed. *Id.* Because Plaintiff refused to turn over the complaint,

14  Defendants Pazo, Tidwell, and Wenneker went into Plaintiff's cell to search for it. *Id.* They

15  could not find it, and then confiscated Plaintiff's carrying case for his CD player, sunglasses, A/C

16  adapter, pens, pencils, and writing tablets. *Id.* Plaintiff contends a violation of the First

17  Amendment.

18                  **2.    Count Two**

19      On January 3, 2002, at 7:30 a.m., Defendants Tidwell and Wenneker appeared at

20  Plaintiff's cell door, where Defendant Tidwell told Plaintiff that he needed to escort him to the

21  unit office. *Id.* at 3. During the escort, Plaintiff observed Defendant Pazo going towards

22  Plaintiff's cell with a large laundry cart. *Id.* Plaintiff was locked in the clinic holding for several

23  hours. *Id.* Upon being allowed to return to his cell, Plaintiff discovered that three large boxes,

24  containing Plaintiff's legal property, had been confiscated by Defendants Tidwell, Wenneker,

25  and Pazo. *Id.* The property was delivered to R&R to Defendants Robinson and Blevins. *Id.*

26  Plaintiff's property was never returned. *Id.* Defendant Lopez, an original Defendant in this

27  action, adjudicated Plaintiff's subsequent inmate grievance. *Id.* Plaintiff contends a violation of

28  the First Amendment.

1

2          **3.      Count Three**

On January 13, 2002, Plaintiff appeared before the classification committee.  *Id.* at 4.

3    Defendant Lopez, the chair of the committee, retaliated against Plaintiff for filing this action by

4    firing Plaintiff from his inmate job assignment as a SHU (security housing unit) legal clerk,

5    without explanation.  *Id.*   Plaintiff contends a violation of the First Amendment.

6          **4.      Count Four**

7          Legal documents from January 4, 2002 to January 30, 2002, sent by the Court, were read,

8    copied, and held by Defendants Robinson and Blevins.  *Id.* at 5.  Defendants used this knowledge

9    of Plaintiff's complaint to engage in retaliation.  *Id.*  The undersigned conspired with Defendants

10   by sending mail from the Court to Defendants rather than Plaintiff.  *Id.*  Plaintiff received his

11   mail obviously opened and re-sealed with tape, with the notation "Legal Mail per R&R" written

12   on it.  *Id.*  Plaintiff contends a violation of the First Amendment.[1]

13         **5.      Count Five**

14         Defendants D. Chapman, E. Hanson, S. Buentempo, Dr. S. Skeen, Dr. McDill, A. Lopez,

15   C. Nelson, and K. Todd fabricated Rules Violation Reports as retaliation.  *Id.* at 6.  On January 8,

16   2002, Defendant Buentempo appeared at Plaintiff's cell door and told him that Defendant

17   Chapman had asked Defendant Buentempo to take Plaintiff to a classification hearing for a job

18   change.  *Id.*  Plaintiff was then formally removed from his legal clerk position.  *Id.*  Plaintiff

19   contends a violation of the First Amendment.

20         **6.      Count Six**

21         After Plaintiff had been fired by Defendant Lopez, Plaintiff appealed the decision.  *Id.* at

22   7.  Defendant Chapman responded to the appeal by taking Plaintiff back to classification less

23   than thirty days after his January 13, 2002 classification hearing, and Plaintiff was put up for

24   transfer.  *Id.*  Defendant Chapman stated that Plaintiff could work in the main library.  *Id.*  While

25   working in the main library, Plaintiff was harassed by Defendants Tidwell and Pazo and

26   _____

27         [1] The Court takes judicial notice of the docket in this action.  A review of the docket
     indicates that the Court did not send Plaintiff any documents from January 4 to January 30 of
28   2002.

restricted from doing any legal work. *Id.* The transfer was cancelled. *Id.* On January 8, 2003, Defendant Chapman had Plaintiff brought back to classification hearing to remove Plaintiff from the main library. *Id.* As Plaintiff was leaving, Plaintiff overheard Defendant C. Nelson whispering to Defendant Chapman regarding Plaintiff's single cell status. *Id.* Plaintiff was later seen by Defendant Skeen, who stated that she would write a chrono to retain Plaintiff on single status, but that Plaintiff would probably be transferred. *Id.* Plaintiff contends a violation of the First Amendment.

### 7. Count Seven

On January 5, 2003, Plaintiff was taken back to classification and referred to IDDTT. *Id.* at 8. Defendant Skeen informed Plaintiff that he would be retained on single cell status. *Id.* Shortly after, Defendant C. Nelson, with Defendant Hansen present, asked Plaintiff why he did not want to be double-celled. *Id.* After Plaintiff told them, both Defendants laughed. *Id.* On February 25, 2003, Defendant Hansen, with Defendant Nelson present, called Plaintiff into the office and stated that he had spoken with Defendant McDill, who had cleared Plaintiff for double celling. *Id.* Plaintiff had never been evaluated by Defendant McDill. *Id.* On February 26, 2003, Defendant Hansen brought Plaintiff back to classification committee, chaired by Defendant Chapman. *Id.* Defendant Chapman asked why Plaintiff did not want to be double celled. After Plaintiff told the truth, Defendant Chapman stated, "Lock him up!" Plaintiff was placed in a holding cell to go to the "hole" (administrative segregation). *Id.* Plaintiff witnessed Defendant Chapman say to Defendant Hansen, "what do you really want to do with [Plaintiff]?" *Id.* Defendant Hansen replied that Plaintiff should be locked up. Defendant Skeen produced a 114-D lock up order, finding that there were no psychological issues to preclude double-celling." *Id.* This contradicted Plaintiff's previous chronos from January 16, 2003 and February 5, 2003. *Id.* Plaintiff contends a violation of the First and Eighth Amendment.

### 8. Count Eight

On February 27, 2003, Plaintiff was issued a CDC 115 authored by Defendant J. Ramos, which stated that Plaintiff attempted to cause conditions likely to threaten institutional security. *Id.* at 9. Defendant A. Lopez saw Plaintiff on February 28, 2003. *Id.* He told Plaintiff that the

115 was flimsy, and Plaintiff would go to classification committee on March 6, 2003.  *Id.*  On March 4, Plaintiff received a revised 115, which changed the charge to "threatening to kill a cell mate", which would result in a lengthy SHU term.  *Id.*  At the committee hearing on March 6, Defendant A. Lopez admitted that he had re-classified the 115, which was based on fabricated charges. *Id.*  While at committee, Defendant K. Todd was extremely hostile towards Plaintiff, threatening to have him committed to a psychiatric facility if he continued to file grievances.  *Id.*  Defendant Todd had denied all of Plaintiff's grievances against Defendant Lopez.  *Id.*  Plaintiff contends a violation of the First Amendment.

### 9.    Count Nine

Defendant S. Skeen began to try and coax Plaintiff into agreeing to take psychotropic medication, an attempt, Plaintiff contends, to render Plaintiff docile and passive and unable to pursue his First Amendment rights.  *Id.* at 10.  Defendant S. Skeen conspired to harm Plaintiff in furtherance of Defendant Todd's threats to have Plaintiff committed to a psychiatric facility.  *Id.*  Plaintiff contends a violation of the First and Eighth Amendment.

### 10.    Count Ten

Plaintiff submitted a grievance contending misconduct by Defendants Lopez, Todd, Chapman, Hansen, Buentempo, Skeen, McDill, and Nelson.  *Id.* at 11.  On April 2, 2003, while in the hole, Defendants P. Matzen and J. Garza came to Plaintiff's cell door and displayed the inmate grievance.  *Id.*  Defendant Matzen asked whether Plaintiff was sure he wanted to proceed further with the appeal.  *Id.*  Defendant Garza slowly put on his black gloves to intimidate Plaintiff.  *Id.*  Plaintiff replied yes. *Id.*  After Defendants Matzen and Garza left, Defendant A. Lopez appeared very soon after with Defendants Matzen and Garza.  *Id.*  Defendant Lopez shouted that Plaintiff would be put up for transfer, and threatening Plaintiff with violence.  *Id.*  Defendant Lopez repeatedly ordered Plaintiff to get out of his cell.  *Id.*  Plaintiff contends a violation of the First Amendment.

### 11.    Count Eleven

On April 4, 2003, Defendant A. Lopez had Defendant Hopkins fabricate a 114 D lockup order for Plaintiff allegedly refusing numerous direct orders to exit his cell and be taken back to

6

1   general population. *Id.* at 12.  Plaintiff had requested in his inmate grievance to be retained in the

2   hole to protect against further retaliation. *Id.*  Plaintiff then received a CDC 115 authored by

3   Defendant M. Dunlop. *Id.*  The first hearing officer assigned to hear the rules violation,

4   lieutenant Galvan, refused because no staff would say that they issued direct orders. *Id.*  On May

5   22, 2003, Defendant J. L. Peterson appeared and found Plaintiff guilty without any evidence. *Id.*

6   On May 23, 2003, Plaintiff was interviewed by Defendant Dunlop regarding an unrelated matter,

7   and admitted that after he wrote the 115 at issue, Defendant discovered that no staff had given

8   Plaintiff direct orders. *Id.*  Defendants Lopez and Todd brought Plaintiff back to classification

9   committee in absentia and released Plaintiff back to classification. *Id.*  Plaintiff received a

10  classification chrono dated April 3, 2003, authored by Defendants Lopez, White, Todd, and

11  McLaughlin stating that Plaintiff had agreed to the committee's actions. *Id.*  Plaintiff contends a

12  violation of the First Amendment.

### 12.   Count Twelve

14         On April 28, 2003, Plaintiff submitted an appeal against Defendants Todd, Lopez, White,

15  and McLaughlin regarding the classification chrono. *Id.* at 13.  On June 23, 2003, Plaintiff

16  received a response, in which Defendant J. Gutierrez responded that Defendant L. Garcia had

17  interviewed Plaintiff twice, and he refused to attend the classification because he did not want to

18  be released back to general population. *Id.*  Plaintiff contends that he never spoke to Defendant

19  Garcia about anything, and that Defendants Garcia and Gutierrez had thus joined the conspiracy

20  of retaliation against Plaintiff. *Id.*  Plaintiff contends a violation of the First Amendment.

### 13.   Count Thirteen

22         On June 17, 2003, Defendants Lopez, Zanchi, Chapman, Garza, Jones, Sherrit, Newby,

23  Arellano, Watson, Genova, and G. Garcia conspired to fulfill Defendant Lopez's threat of cell-

24  extraction. *Id.* at 14.  Defendants Garza and J. Jones each discharged the entire contents of a

25  MK-46 pepper spray dispenser into Plaintiff's cell. *Id.*  After Defendant Garza emptied his

26  dispenser, he opened the food port of Plaintiff's cell door and discharged the entire contents of a

27  MK-9 pepper spray into the cell, transforming Plaintiff's cell into a proverbial gas chamber. *Id.*

28  Plaintiff was denied medical care while in the holding cage. *Id.*  Plaintiff summoned a medical

MTA Deperio, who informed Plaintiff that the cell extraction was outside of policy because medical had not been notified. *Id.* Upon Plaintiff's arrival at Lancaster State Prison on June 17, 2003, Plaintiff forwarded an amended appeal to Defendant N. Grannis, chief of the inmate appeals branch, informing of Defendant Lopez's actions. *Id.* Plaintiff contends a violation of the First Amendment, and excessive force in violation of the Eighth Amendment. *Id.*

### 14.   Count Fourteen

On July 7, 2003, Defendant N. Grannis sent a rejection notice to Plaintiff, stating that the office provided only the Director's level review. *Id.* at 15. On August 8, 2003, Plaintiff received this notice. *Id.* Plaintiff immediately made an attempt to submit an amendment to the appeal to Defendant S. Whitlach, appeals coordinator at CCI. *Id.* On September 16, 2003, Defendant Whitlach sent a response, rejecting Plaintiff's amendment, which Plaintiff received on December 25, 2003. *Id.* Plaintiff then wrote a letter to Defendant Whitlach, explaining that his amendment to the appeal had been forwarded in a timely manner, and returned the appeal back to Defendant Whitlach for processing. *Id.* at 16. On October 1, 2004, Defendant Whitlach refused to process the grievance because it was untimely. *Id.* Plaintiff then forwarded his appeal again to Defendant Grannis. On December 24, 2004, Defendant Grannis again rejected the appeal, for the same reason. On January 11, 2005, Plaintiff again submitted his appeal, this time including an additional inmate grievance against Defendants Grannis and Whitlach. Id. On June 25, 2005, Plaintiff received a response from Defendant Grannis, which Plaintiff believes is a reversal of Defendant Grannis's previous position. *Id.* at 16-17. The response returned Plaintiff's appeal, and also stated that the matter had been fully adjudicated and a decision rendered. *Id.* Plaintiff believes Defendants Grannis and Whitlach are part of a conspiracy against Plaintiff. *Id.*

Plaintiff contends a violation of the Supremacy Clause, 18 U.S.C. §§ 1961, 1962(d), and 1341, RICO (Racketeer Influenced and Corrupt Organizations Act), and California Penal Code section 520.

### 15.   Count Fifteen

On October 12, 2010, the Ninth Circuit reversed and remanded to this Court in part. *Id.* at 18. The undersigned initiated the retaliation against Plaintiff by sending an "advance copy" of

Plaintiff complaint to prison officials. *Id.* Plaintiff filed a motion for injunctive relief to restore Plaintiff's single cell status at Kern Valley State Prison ("KVSP"). *Id.* On September 22, 2010, Defendant Kenneth Roost, deputy attorney general for the state of California, committed mail fraud by submitting a notice that he had been substituted as counsel of record in this action. *Id.* Plaintiff forwarded his motion for injunctive relief to Defendant Roost. *Id.* Defendant Roost committed further mail fraud by responding to Plaintiff and stating that he had forwarded Plaintiff's motion to Defendant John Riches, counsel of record for Defendants. *Id.*

On October 29, 2010, Defendant W. Epperson, correctional sergeant at KVSP, stated to Plaintiff that the director of corrections in Sacramento had ordered Plaintiff and his cell mate to be separated. *Id.* at 19. Plaintiff was then moved to another cell with inmate Tate, who is allegedly a convicted rapist and twice Plaintiff's size. *Id.* Plaintiff contends a conspiracy by the undersigned, Defendants Riches, Roost, and KVSP. *Id.*

District Judge O'Neill and Flores, a clerk at the Eastern District of California, then engaged in "retaliation" by forwarding an order reopening this case to the Fresno Parole department, even though Plaintiff was not incarcerated there. *Id.* at 20. Plaintiff contends that this was a conspiracy to have Plaintiff's second amended complaint dismissed. *Id.* On January 18, 2011, Plaintiff filed a judicial misconduct complaint with the Ninth Circuit, complaining of the undersigned and Judge O'Neill's actions. *Id.*

On February 3, 2011, Defendant M. Stewart summoned Plaintiff to the program office to attempt to intimidate Plaintiff into accepting being locked in the hole to be protected from Defendant Epperson. *Id.* This failed, at which point Defendant Stewart threatened to throw Plaintiff in the hole for no reason. *Id.* Plaintiff contends that this was a conspiracy to have Plaintiff's second amended complaint dismissed. *Id.* Plaintiff filed grievances regarding this incident, and forwarded them to both Defendants M. D. Biter, acting warden of KVSP, and Defendant secretary Matthew Cate, neither of whom responded. *Id.*

On February 16, 2011, Defendants J. Hernandez and M. Marin arrived at Plaintiff's cell from Defendant Stewart's office. *Id.* Defendants Hernandez and Marin claimed to be conducting a random cell search. *Id.* After Plaintiff was out of view of potential inmate

1  witnesses, Defendants Hernandez and Marin proceeded to throw Plaintiff to the ground and

2  punch and kick him in the face and head.  Defendant Epperson stated that those judges are going

3  to make sure that Plaintiff died in prison.  Defendant Stewart intimidated a licensed vocational

4  nurse Negre into cataloging Plaintiff's injuries as minor.  *Id.*  Plaintiff was thrown in the hole on

5  fabricated charges of a plastic weapon.  *Id.* at 21.  Defendants Hernandez, Marin, Page, Stewart,

6  Epperson, and T. S. Arlitz's names appear on Plaintiff's rules violation report.  *Id.*

7       On March 7, 2011, Plaintiff filed a complaint with the Ninth Circuit regarding Judge

8  O'Neill and the undersigned's conduct.  *Id.*  On March 9, 2011, the undersigned ordered Plaintiff

9  to file a third amended complaint, limiting Plaintiff's pleadings to twenty-five pages.  *Id.*  The

10  undersigned also issued a Findings and Recommendations to deny Plaintiff's motion for

11  injunctive relief.[2]  *Id.*  Plaintiff contends mail fraud because an order from the Court was

12  mislabeled.  *Id.*

13       Defendant Ostrander found Plaintiff guilty on the false rules violation report.  *Id.*  On

14  March 6, 2011, Plaintiff was interviewed by Defendant Campagna regarding his grievances, who

15  refused to hear Plaintiff's beating.  *Id.*  On March 8, 2011, Plaintiff filed an inmate grievance

16  against Defendant Campagna.  *Id.*  On March 23, 2011, appeals coordinator Defendant J.

17  Acebedo screened out Plaintiff's appeal, and on March 29 and April 7 of 2011, Defendants S.

18  Tallerico and D. Tarnoff did the same.  *Id.*  On May 11, 2011, Plaintiff received a letter from

19  Defendant D. Lee on behalf of Defendant Cate, advising Plaintiff to file a complaint with the

20  inspector general. *Id.*

21       Plaintiff contends a violation of the First, Fifth, and Eighth Amendment, 18 U.S.C. §§

22  1951, 1961, 1962(b), and 1341, the Hobbs Act, and RICO.

23              **16.    Count Sixteen**

24       Plaintiff contends that the Prison Litigation Reform Act violates the Supremacy Clause,

25  the First, Fifth, and Fourteenth Amendments, and the Sherman Act.  *Id.*  The PLRA allows the

26

27

28  [2]  Plaintiff appealed the denial of Plaintiff's motion.  However, the Ninth Circuit dismissed the appeal as untimely.  Docs. 251, 252.

CDCR to screen out administrative appeals for the purposes of denying inmates the ability to exhaust administrative remedies.  *Id.*

Plaintiff requests as relief an injunction restoring Plaintiff's single cell status, an investigation by the office of Internal Affairs into the false rules violation reports, and trial by jury.  *Id.* at 25.

## IV.   **Analysis**

### A.   **Statute of Limitations**

Defendants contend that part or all of Plaintiff's claims from Counts One through Seven, Nine, Ten, Thirteen, and Fourteen are barred by the applicable statute of limitations, and are not preserved by the relation back or equitable tolling doctrines.  Defs.' Mem. P. & A. 3:5-9:9. Defendants contend that all of Plaintiff's allegations concerning events that occurred in 2002 are barred.  Because the Court had ordered Plaintiff to re-file his allegations in his second amended complaint into this third amended complaint, the filing date of May 3, 2006 will be used here.[3]

Because § 1983 contains no specific statute of limitations, federal courts should borrow state statutes of limitations for personal injury actions in § 1983 suits.  *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Alameda Books, Inc. v. City of L.A.*, 631 F.3d 1031, 1041 (9th Cir. 2011); *Lukovsky v. City of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008).  Federal courts should also borrow all applicable provisions for tolling the limitations period found in state law. *Wallace*, 549 U.S. at 387.  California's statute of limitations for an action for a personal injury caused by the wrongful or negligent act of another is two years from the date of accrual.  Cal. Civ. Proc. Code § 335.1 (2009).[4]  Federal law determines when a cause of action accrues and the

---

[3]  The date of May 3, 2006 is when Plaintiff lodged his second amended complaint with the Court.  Doc. 73.  The Court ordered Plaintiff's second amended complaint filed on September 8, 2006.  Doc. 89.

[4]  Prior to January 1, 2003, the limitations period for personal injury actions was one year. Cal. Civ. Proc. Code § 340.3 (2002).  If a plaintiff has asserted any claims that were not time barred on the effective date of the change in the limitations period, the plaintiff receives the benefit of the extension. *Miller v. Davis*, 420 F. Supp. 2d 1108, 1110-11 (E. D. Cal. 2006).  The original one year limitations period results in Plaintiff's allegations from January 2, 2002 onward not being time-barred as of January 1, 2003, when the statute was enlarged an additional year.

1  statute of limitations begins to run for a § 1983 claim. *Lukovsky*, 535 F.3d at 1048. A federal

2  claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of

3  the action. *Id.*

4      Plaintiff contends that he is entitled to equitable tolling for the time period in which he

5  attempted to exhaust administrative remedies. Pl.'s Opp'n 7-8. Plaintiff is correct. *See Brown v.*

6  *Valoff*, 422 F.3d 926, 943 (9th Cir. 2005) (holding that "the applicable statute of limitations must

7  be tolled while a prisoner completes the mandatory exhaustion process."). However, Plaintiff

8  receives only two years under California law for the applicable statute of limitations. The

9  exhaustion of administrative remedies would still have to account for the time period from when

10  the claim first accrued to the lodging of Plaintiff's second amended complaint on May 5, 2006.

11  Plaintiff's complaint lists the inmate grievances that he filed regarding each incident.

12      However, Defendants have not presented further arguments or other evidence regarding

13  the statute of limitations. Because statute of limitations is an affirmative defense, Fed. R. Civ. P.

14  8(c)(1), and Defendants have not presented evidence regarding equitable tolling and the

15  exhaustion of administrative remedies, Defendants' motion to dismiss for statute of limitations

16  should be denied.

17      **B.    Relation Back**

18      Defendants further contend that the relation back doctrine does not apply, citing to *Mayle*

19  *v. Felix*, 545 U.S. 644 (2005). Defs.' Mem. P. & A. 7:2-8:2. Plaintiff contends that all his

20  claims arose out of a series of transactions or occurrences, citing Federal Rule of Civil Procedure

21  15(c)(2). Pl.'s Opp'n 12.

22      The parties are incorrect as to the proper relation back standard. Under Ninth Circuit law,

23  

24  Plaintiff thus receives the benefit of the extension.

25      Contrary to Defendants' assertion, Plaintiff is not entitled to an extra two years under
section 352.1 of the California Code of Civil Procedure. *See* Cal. Civ. Proc. Code § 352.1(c)

26  ("This section does not apply to an action, other than an action to recover damages or that portion
of an action that is for the recovery of damages, relating to the conditions of confinement,

27  including an action brought by that person pursuant to Section 1983 of Title 42 of the United
States Code."). As alleged in Plaintiff's requested relief in the operative complaint, this is not an

28  action to recover damages.

1  for § 1983 claims, the relation back doctrine is governed by state law, as it is a matter related to

2  the statute of limitations.  *Merritt v. County of Los Angeles*, 875 F.2d 765, 768 (9th Cir. 1989);

3  *Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1463 (9th Cir. 1988).  Additionally, it

4  appears that the parties are conflating amendment of pleadings with supplemental pleadings.  It is

5  Plaintiff's supplemental pleadings which are at issue here.[5]

6           Under California law,

7           'Whether the supplemental complaint may encompass the . . . period following
             commencement of suit, despite the statute of limitations, will depend upon the
8           nature of the claims raised in the supplemental pleading.  If those claims are
             unrelated to those alleged in the initial complaint, or rely on conduct or events
9           different from those involved in the original action, the statute of limitations
             should be applied. [] Where, however, the original pleading gave notice that the
10          wrongful conduct was of a continuing nature, supplemental pleadings addressed to
             the same conduct should not encounter statute of limitations questions.'

11

12  *Bendix Corp. v. City of L.A.*, 150 Cal. App. 3d 921, 926 (1984) (quoting *William Inglis & Sons*

13  *Baking Co. v. Itt Cont'l Baking Co.*, 668 F.2d 1014, 1057 (9th Cir. 1981) (citing Rule 15(d) of

14  the Federal Rules of Civil Procedure)); *cf. Lee v. Bank of America NTSA*, 27 Cal. App. 4th 197,

15  214 (1994) (finding that pleadings filed in amended complaint were not supplemental pleadings

16  as they were unrelated).

17           Plaintiff's second amended complaint "gave notice that the wrongful conduct was of a

18  continuing nature."  Counts One through Twelve of the second amended complaint, which have

19  been fully adjudicated, alleged a continued series of retaliation for Plaintiff filing inmate

20  grievances.  Plaintiff's supplemental pleadings alleged more retaliation as a result of Plaintiff

21  filing a complaint regarding those grievances.  Thus, for purposes of relation back, Plaintiff's

22  claims are related to the original pleadings.  Accordingly, the Court finds no statute of limitations

23  concerns for Plaintiff's claims in Counts One through Seven, Nine, Ten, Thirteen, and Fourteen.

24  ///

25  _____

26        [5]  Supplemental pleadings "set[] out any transaction, occurrence, or event that happened
     after the date of the pleading to be supplemented."  Fed. R. Civ. P. 15(d).  Plaintiff's second
27   amended complaint included supplemental pleadings, namely events that occurred after the filing
     of Plaintiff's original complaint.  Plaintiff's third supplemental complaint restates claims raised
28   in the second amended complaint.

1    ### C.    Permissive Joinder

2        Defendants contend that the newly added Defendants, forty-four in total, are improperly

3    joined in this action pursuant to Rule 20(a)(2) of the Federal Rules of Civil Procedure.  Defs.'

4    Mem. P. & A. 12:21-13:12.  Plaintiff contends that he does comply with Rule 20.  Pl.'s Opp'n

5    23.

6        Pursuant to Federal Rule of Civil Procedure 20(a)(2), defendants may be joined in one

7    action if "(A) any right to relief is asserted against them jointly, severally, or with respect to or

8    arising out of the same transaction, occurrence, or series of transaction or occurrences; and (B)

9    any question of law or fact common to all defendants will arise in the action."   Plaintiff contends

10   that there is a conspiracy against Plaintiff by all Defendants named in this action to retaliate

11   against him for exercising his First Amendment rights.  If Plaintiff sufficiently alleged a

12   conspiracy or RICO violation, then all Defendants would be properly joined, as the right to relief

13   against all Defendants would arise from the same series of transaction or occurrences.

14       RICO, 18 U.S.C. §§ 1961-1968, allows a private citizen to sue to recover treble damages

15   for injury "by reason of a violation of section 1962," which prohibits conducting or participating

16   in the conduct of an enterprise through a pattern of racketeering activity or through the collection

17   of an unlawful debt.  18 U.S.C. §1962.  A violation of § 1962(c) requires 1) conduct 2) of an

18   enterprise 3) through a pattern 4) of racketeering activity.  *Sedima, S.P.R.L. v. Imrex Co.*, 473

19   U.S.479, 496 (1985).  Furthermore, the plaintiff must actually be injured by the conduct which

20   purportedly violates 18 U.S.C. § 1962.  *Id.*  Plaintiff alleges a violation of 18 U.S.C. § 1962(d).

21   Plaintiff's allegations are insufficient to state a claim for violation of RICO.  Plaintiff makes only

22   a bare allegation of a violation of RICO, which fails to state a claim.  *Iqbal*, 129 S. Ct. at 1949.

23       A conspiracy claim brought under § 1983 requires proof of "'an agreement or meeting of

24   the minds to violate constitutional rights,'" *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001)

25   (quoting *United Steel Workers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir.

26   1989) (citation omitted)), and an actual deprivation of constitutional rights, *Hart v. Parks*, 450

27   F.3d 1059, 1071 (9th Cir. 2006) (quoting *Woodrum v. Woodward County, Oklahoma*, 866 F.2d

28   1121, 1126 (9th Cir. 1989)).  "'To be liable, each participant in the conspiracy need not know the

14

1    exact details of the plan, but each participant must at least share the common objective of the

2    conspiracy.'" *Franklin*, 312 F.3d at 441 (quoting *United Steel Workers*, 865 F.2d at 1541).

3         The federal system is one of notice pleading, and the court may not apply a heightened

4    pleading standard to plaintiff's allegations of conspiracy. *Empress LLC v. City and County of*

5    *San Francisco*, 419 F.3d 1052, 1056 (9th Cir. 2005); *Galbraith v. County of Santa Clara*, 307

6    F.3d 1119, 1126 (2002).  However, although accepted as true, the "[f]actual allegations must be

7    [sufficient] to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*,

8    550 U.S. 544, 555 (2007) (citations omitted).  A plaintiff must set forth "the grounds of his

9    entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic

10   recitation of the elements of a cause of action . . . ." *Id.* (internal quotations and citations

11   omitted).  As such, a bare allegation that Defendants conspired to violate Plaintiff's constitutional

12   rights will not suffice to give rise to a conspiracy claim under § 1983.  Plaintiff's conclusion that

13   all perceived adverse action against Plaintiff is a conspiracy is a legal conclusion and does not

14   rise to the level of a plausible claim. *Iqbal*, 129 S. Ct. at 1949-50.

15        Because no conspiracy or RICO claim exists to link all Defendants in this action, the

16   Court examines Plaintiff's claims in more detail to determine whether all claims arise from the

17   same series of transactions or occurrences.

18                          **D.    Claims At KVSP**

19        Plaintiff's claims arising at KVSP, Count Fifteen, are unrelated to the claims arising at

20   CCI, as they do not arise from the same series of transactions or occurrences.  The only link

21   between the series of transactions at the two prisons is Plaintiff's bare allegations of RICO and

22   conspiracy, which fail to state a claim. For the sake of judicial economy, the Court will screen

23   Plaintiff's claims against deputy attorney generals Kenneth Roost and John Riches, District

24   Judge O'Neill, E. Flores, and the undersigned.  Plaintiff's other claims arising at KVSP will be

25   dismissed from this action, without prejudice to filing in a new, separate action.

26        Plaintiff's allegation that Judge O'Neill, E. Flores, Kenneth Roost, and John Riches

27   engaged in mail fraud fails to state a claim.  Mail fraud, codified at 18 U.S.C. § 1341, is not

28   actionable under 42 U.S.C. § 1983. *See Wilcox v. First Interstate Bank*, 815 F.2d 522, 533 n.1

1  (9th Cir. 1987) (recognizing that no private right of action exists under 18 U.S.C. § 1341).

2  Plaintiff likewise cannot raise a § 1983 claim based on the Hobbs Act, 18 U.S.C. § 1951, for

3  federal criminal extortion.  In order to seek redress under § 1983, there must be a private cause of

4  action.  *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997).  No private cause of action exists for

5  18 U.S.C. § 1951.

6         If Plaintiff is alleging retaliation against Judge O'Neill, E. Flores, Kenneth Roost, John

7  Riches, and the undersigned, Plaintiff fails to state a claim.  Allegations of retaliation against a

8  prisoner's First Amendment rights to speech or to petition the government may support a § 1983

9  claim.  *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v.*

10  *Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).

11  "Within the prison context, a viable claim of First Amendment retaliation entails five basic

12  elements:  (1) An assertion that a state actor took some adverse action against an inmate (2)

13  because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

14  exercise of his First Amendment rights, and (5) the action did not reasonably advance a

15  legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

16         As stated previously in other orders, Plaintiff's mail being sent to the wrong address was

17  an unintentional error, and promptly corrected when brought to the Court's attention.  Plaintiff's

18  contention that Judge O'Neill, the undersigned, or E. Flores attempted to have Plaintiff's

19  complaint dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure is

20  speculative.  Plaintiff's action still proceeds.  Thus, there is no allegation of an adverse action

21  because of Plaintiff's First Amendment conduct, and no cognizable retaliation claim.  Likewise,

22  Defendant Roost's alleged conduct in telling Plaintiff that he had sent a notice that he had

23  forwarded Plaintiff's motion for injunctive relief, without having done so, is not adverse action

24  because of Plaintiff's First Amendment conduct.

25         Plaintiff's contention that the undersigned sent an advance copy of Plaintiff's complaint

26  to any Defendants fails to state a claim.  A review of the court's docket reveals that no

27  documents were sent by the Court regarding this action until February 12, 2002.  Plaintiff's

28  contention that the undersigned sent any documents to prison officials between January 4 to

1   January 30 of 2002 is without merit.  Plaintiff's allegations of retaliation fail to state a claim, as

2   Plaintiff has not alleged facts which demonstrate that the undersigned took adverse action against

3   Plaintiff because of Plaintiff's protected conduct.  Additionally, both the undersigned and Judge

4   O'Neill are entitled to judicial immunity for all conduct taken in the course of their official

5   capacities.  *See Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curiam); *Moore v. Brewster*, 96 F.3d

6   1240. 1243 (9th Cir. 1996); *Tanner v. Heise*, 879 F.2d 572, 576-78 (9th Cir. 1989).

7   **E.      Claims at CCI**

8          **1.      Counts One and Two**

9          Plaintiff states a cognizable claim for relief against Defendants Wenneker, Pazo, and

10  Tidwell for retaliation in violation of the First Amendment for depriving Plaintiff of his property

11  because he filed a civil rights complaint.  Plaintiff fails to state a claim for relief against

12  Defendants Blevins and Robinson for retaliation.  Plaintiff alleges that Defendants Blevins and

13  Robinson received Plaintiff's property, which was never returned.  These allegations do not

14  demonstrate that Defendants Blevins and Robinson acted adversely because of Plaintiff's

15  complaint.

16         **2.      Count Three**

17         Plaintiff states a cognizable claim for relief for retaliation in violation of the First

18  Amendment against Defendant Lopez for firing Plaintiff because he had filed this action and an

19  inmate grievance.

20         **3.      Count Four**

21         Plaintiff fails to state a claim for relief under the First Amendment against Defendants

22  Blevins and Robinson for opening Plaintiff's mail.  Prisoners have "a First Amendment right to

23  send and receive mail." *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995).  Prison regulations

24  relating to the regulation of incoming mail are analyzed under the *Turner* reasonableness

25  standard set forth in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987).  *Prison Legal News v. Lehman*,

26  397 F.3d 692, 699 (9th Cir. 2005) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989)).  The

27  regulation is valid if it is reasonably related to legitimate penological interests.  *Turner*, 482 U.S.

28  at 89.  In determining the reasonableness of the regulation, the court must consider the following

17

factors: (1) whether there is a "valid, rational connection between the regulation and the legitimate government interest put forward to justify it," (2) "whether there are alternative means of exercising the right," (3) the impact that the "accommodation of the asserted constitutional right will have on guards and other inmates," and (4) "the absence of ready alternatives." *Id.* at 89-90.

However, mail from public officials or agencies does not necessarily have to be treated as legal mail. *See Mann v. Adams*, 846 F.2d 589, 590-91 (9th Cir. 1988) (per curiam) (finding that mail from public agencies, public officials, civil rights groups, and news media may be opened outside the prisoner's presence in light of security concerns). Furthermore, "[m]ail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail." *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998). Here, it is unclear to what mail Plaintiff refers, as the court docket reflects that no documents were sent from the Court to Plaintiff regarding this action between January 4 and January 30 of 2002. Nonetheless, mail from the Court is not generally confidential and thus is not legal mail. There does not appear to be a First Amendment violation for opening mail from the court outside of Plaintiff's presence.

Plaintiff also fails to state a claim for relief for denial of access to the courts. Inmates have a fundamental constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Silva v. Di Vittorio*, 658 F.3d 1090, 1101-02 (9th Cir. 2011). The right of access to the courts is the right to bring to court a grievance the inmate wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil rights actions. *Lewis*, 518 U.S. at 354. To bring a claim, a prisoner must have suffered an actual injury by being shut out of court. *Christopher v. Harbury,* 536 U.S. 403, 415 (2002); *Lewis*, 518 U.S. at 351; *Phillips v. Hust*, 588 F.3d 652, 655 (9th Cir. 2009). Plaintiff alleges no facts which indicate that he has been shut out of court by Defendants through any alleged interference.

### 4.    Count Five

Plaintiff fails to state a claim against Defendants D. Chapman, E. Hanson, S. Buentempo, Dr. S. Skeen, Dr. McDill, A. Lopez, C. Nelson, and K. Todd for fabricating Rules Violation

1  Reports as retaliation.  Plaintiff's legal conclusions are insufficient to demonstrate retaliation.

2  *Iqbal*, 129 S. Ct. at 1949-50.

3           **5.    Count Six**

4           Plaintiff states a claim against Defendant Chapman for retaliation in violation of the First

5  Amendment.  Plaintiff alleges Defendant Chapman, in response to Plaintiff filing an inmate

6  grievance regarding being fired from his job by Defendant Lopez, had Plaintiff put up for transfer

7  to another prison.  This transfer was subsequently cancelled.  However, a retaliatory prison

8  transfer may be an adverse action for purposes of retaliation.  *Gomez v. Vernon*, 255 F.3d 1118,

9  1127-28 (9th Cir. 2001).

10          **6.    Count Seven**

11          Plaintiff fails to state a claim against Defendants Hanson, Chapman, McDill, and Skeen

12 for retaliation in violation of the First Amendment.  The only action taken against Plaintiff was

13 the removal of his single cell status.  However, Plaintiff alleges no facts which demonstrate that

14 the removal of single cell status is an adverse action, or that it was taken because of Plaintiff's

15 protected First Amendment conduct.  *See Brodheim v. Cry*, 584 F.3d 1262, 1269-70 (9th Cir.

16 2009) (correct standard for adverse action is whether a person of ordinary firmness would have

17 been chilled in the exercise of his First Amendment rights).  Merely losing single cell status is

18 insufficient to demonstrate a chilling of Plaintiff's First Amendment rights.

19          Plaintiff fails to allege a retaliation claim for placing Plaintiff in administrative

20 segregation.  Plaintiff fails to allege facts which demonstrate that his placement in administrative

21 segregation was because of  any protected First Amendment conduct by Plaintiff.

22          Plaintiff also fails to link Defendant McDill to any retaliatory actions.  Plaintiff contends

23 that he was never seen by Defendant McDill. Thus, it would appear that Defendant McDill was

24 not involved in having Plaintiff removed from single cell status.

25          Plaintiff fails to state a claim against Defendants Hanson, Chapman, McDill, and Skeen

26 for violation of the Eighth Amendment.  The Eighth Amendment protects prisoners from

27 inhumane methods of punishment and from inhumane conditions of confinement.  *Morgan v.*

28 *Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).  Extreme deprivations are required to make out

a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations and quotations omitted).  In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. *E.g.*, *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).  Plaintiff alleges no facts which demonstrate that prison officials knew of and disregarded an excessive risk of serious harm to Plaintiff's health or safety by removing Plaintiff from single cell status. *See Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981) (finding that double-celling at maximum security prison did not violate the Eighth Amendment since prisoners were not deprived of essential food, medical care, or sanitation, nor did double-celling increase violence or other intolerable conditions of confinement).

### 7.  Count Eight

Plaintiff states a cognizable retaliation claim against Defendants K. Todd and A. Lopez. Defendant K. Todd allegedly threatened to have Plaintiff transferred to a psychiatric facility because of all the grievance that he filed.  Defendant Lopez allegedly changed Plaintiff's CDC 115 report to threatening to kill a cell mate.  Based on the previous allegations against Defendant Lopez, it is reasonable to infer that Defendant Lopez did this because of Plaintiff filing a civil rights complaint and inmate grievances against him.

Plaintiff fails to state a cognizable claim against Defendant Ramos.  Plaintiff fails to allege facts which demonstrate that Defendant Ramos took adverse action against Plaintiff because of Plaintiff's protected First Amendment conduct.

### 8.  Count Nine

Plaintiff fails to state a claim against Defendant Skeen for retaliation in attempting to coax Plaintiff to take psychotropic medication.  Plaintiff alleges no adverse action by Defendant Skeen.  Coaxing Plaintiff to take psychotropic medication does not demonstrate a chilling effect on Plaintiff's First Amendment rights.  Plaintiff's contention that Defendant Skeen wanted to make Plaintiff docile so that he would no longer exercise his First Amendment rights is

speculative.

Plaintiff fails to state a claim against Defendant Skeen for violation of the Eighth Amendment.  Plaintiff alleges no facts which demonstrate that she knew of an disregarded an excessive risk of serious harm to Plaintiff's health by coaxing Plaintiff to take psychotropic medication.  There is no allegation that demonstrate Plaintiff faced a sufficiently serious harm. *Farmer*, 511 U.S. at 834.

### 9.   Count Ten

Plaintiff states a cognizable retaliation claim against Defendants Metzen, Garza, and Lopez.  Plaintiff alleges that Defendants Metzen and Garza attempted to intimidate Plaintiff regarding the filing of his inmate grievance.  Plaintiff alleges Defendant Lopez threatened Plaintiff with violence and with being transferred to another prison because of the grievance.

Plaintiff does not state a claim against Defendants Todd, Chapman, Hansen, Buentempo, Skeen, McDill, and Nelson regarding this incident.

### 10.   Count Eleven

Plaintiff fails to state a retaliation claim against Defendant Hicks for authoring a CDC 114 D order to place Plaintiff in administrative segregation for allegedly refusing a direct order. Plaintiff alleges no facts which demonstrate that Defendant Hicks authored the order because of Plaintiff's protected First Amendment conduct.  Plaintiff states a cognizable retaliation claim against Defendant Lopez.  Plaintiff alleges that Defendant Lopez had directed Defendant Hicks to author the report, which based on previous allegations, indicates it was done because Plaintiff had filed inmate grievances against him.  Plaintiff fails to state a retaliation claim against Defendant Dunlop, who authored the CDC 115 Rules Violation Report.  Plaintiff alleges no facts that indicate Defendant Dunlop took adverse action *because of* Plaintiff's protected First Amendment conduct.

Plaintiff fails to state a retaliation claim against Defendant Peterson.  Plaintiff alleges no facts which demonstrate that Defendant Peterson finding Plaintiff guilty of the Rules Violation Report was done because of Plaintiff's First Amendment conduct.

Plaintiff fails to state a retaliation claim against Defendants Lopez, White, Todd, and

1 McLaughlin regarding the classification committee's actions. Plaintiff alleges no facts which

2 demonstrate that Defendants Lopez, White, Todd, and McLaughlin took adverse action against

3 Plaintiff because of Plaintiff's First Amendment conduct.

4 **11.    Count Twelve**

5 Plaintiff fails to state a retaliation claim against Defendants Gutierrez and Garcia.

6 Plaintiff alleges that Defendant Gutierrez responded to Plaintiff's grievance by stating that

7 Defendant Garcia had interviewed Plaintiff, which Plaintiff maintains did not occur. This

8 allegation does not indicate that Defendants Gutierrez or Garcia took adverse action against

9 Plaintiff because of Plaintiff's First Amendment activities.

10 **12.    Count Thirteen**

11 Plaintiff states a cognizable claim for excessive force against Defendants Garza and

12 Jones. "What is necessary to show sufficient harm for purposes of the Cruel and Unusual

13 Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." *Hudson*

14 *v. McMillian*, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is

15 . . . contextual and responsive to contemporary standards of decency." *Id.* (internal quotation

16 marks and citations omitted). The malicious and sadistic use of force to cause harm always

17 violates contemporary standards of decency, regardless of whether or not significant injury is

18 evident. *Id.* at 9; *see also Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth

19 Amendment excessive force standard examines *de minimis* uses of force, not *de minimis*

20 injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause

21 of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual

22 punishments necessarily excludes from constitutional recognition *de minimis* uses of physical

23 force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'

24 *Id.* at 9-10 (internal quotations marks and citations omitted).

25 Plaintiff alleges that Defendant Garza emptied two canisters of pepper spray into

26 Plaintiff's cell, while Defendant Jones emptied one canister. This is sufficient to allege a claim

27 for excessive force.

28 Plaintiff fails to state a claim regarding being denied medical care while in the holding

1   cage.  Plaintiff fails to allege facts which link any Defendants to an act or failure to act with

2   knowledge and disregard of an excessive risk to Plaintiff's health.  *Farmer*, 511 U.S. at 837.

3          Plaintiff fails to allege a retaliation claim against Defendants Lopez, Zanchi, Chapman,

4   Garza, Jones, Sherrit, Newby, Arellano, Watson, Genova, and G. Garcia as to Count Thirteen.

5   Plaintiff fails to allege facts which demonstrate that adverse action was taken against Plaintiff

6   because of Plaintiff's First Amendment conduct.  Plaintiff's bare allegations of conspiracy are

7   insufficient to support the claim.

8                              **13.    Count Fourteen**

9          Plaintiff fails to state a claim against Defendants Grannis and Whitlach for any violation.

10  Plaintiff contends that Defendants screened out Plaintiff's grievances improperly.  There is no

11  constitutional entitlement to a specific prison grievance procedure.  *Ramirez v. Galaza*, 334 F.3d

12  850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988)).  Plaintiff's

13  claim for violation of California Penal Code section 520, for extortion, is not a cause of action

14  under state law, as that is a criminal statute.  To the extent that Plaintiff cites this section as a

15  predicate act for purposes of RICO, Plaintiff has not alleged a viable RICO claim.

16                             **14.    Count Sixteen**

17         Plaintiff fails to state a claim that 42 U.S.C. § 1997e(a) violates the Supremacy Clause.

18  The Supremacy Clause states, "This Constitution, and the Laws of the United States which shall

19  be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority

20  of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be

21  bound thereby, any Thing in the Constitution or Laws of any State to the Contrary

22  notwithstanding."  U.S. Const. art. VI, cl. 2.  "[T]he dispositive issue in any federal preemption

23  questions remains congressional intent."  *Aguayo v. U.S. Bank*, 653 F.3d 912, 918 (9th Cir. 2011)

24  (citing *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 30 (1996)).  The question to

25  ask is, "'[d]id congress, in enacting the Federal Statute, intend to exercise its constitutionally

26  delegated authority to set aside the laws of a State?  If so, the Supremacy Clause requires courts

27  to follow federal, not state, law.'" *Id.* (quoting *Barnett Bank of Marion Cnty.*, 517 U.S. at 30).

28         A review of 42 U.S.C. § 1997e(a), and of the PLRA, indicates that Congress specifically

1   declined to set aside the laws of a state with regards to exhaustion of administrative remedies.

2   *See Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) ("Beyond doubt, Congress enacted § 1997e(a)

3   to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress

4   afforded *corrections officials* time and opportunity to address complaints internally before

5   allowing the initiation of a federal case.") (emphasis added).  Administrative remedies are

6   pursued through a prison's system, and defined by the prison.  *See Jones v. Bock*, 549 U.S. 199,

7   218 (2007) ("[T]o properly exhaust administrative remedies prisoners must complete the

8   administrative review process in accordance with the applicable procedural rules[] – rules that

9   are defined not by the PLRA, but by the prison grievance process itself.") (internal citations and

10  quotations omitted).  Plaintiff thus fails to state a claim for violation of the Supremacy Clause.

11       Plaintiff also fails to state a claim for violation of the First, Fifth, and Fourteenth

12  Amendments.  Plaintiff alleges no facts that demonstrate § 1997e(a) violates any of these

13  Amendments.

14       Plaintiff fails to state a claim for violation of the Sherman Act.  Liability under the

15  Sherman Act, 15 U.S.C. § 1, "requires a 'contract, combination . . ., or conspiracy, in restraint of

16  trade or commerce." *Twombly*, 550 U.S. at 548.  There are no allegations that any restraint of

17  trade or commerce has occurred.

18      **F.**    **Equitable Relief**

19       Plaintiff requests as relief single cell status at his current prison of incarceration, KVSP.

20  Because the Court will dismiss Plaintiff's claims arising at KVSP from this action, Plaintiff's

21  request for equitable relief will be moot.  Plaintiff is no longer incarcerated at CCI.  *Andrews v.*

22  *Cervantes*, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007) (citing *Johnson v. Moore*, 948 F.2d 517, 510

23  (9th Cir. 1991) (per curiam)).  The Court has no jurisdiction to determine the rights of parties not

24  before it.  *Zepeda v. United States Immigration & Naturalization Serv.*, 753 F.2d 719, 727 (9th

25  Cir. 1983); *see* Fed. R. Civ. P. 65(d).  The Court also lacks jurisdiction over the Office of Internal

26  Affairs, as Internal Affairs is not a party to this action.  Thus, the Court will not be able to grant

27  any of Plaintiff's requests for equitable relief.  Because equitable relief was the only relief

28  requested, the Court cannot grant any of Plaintiff's requests for relief.

### G.      Leave To Amend

The Court will recommend granting Plaintiff leave to amend as to his requests for relief. Because Plaintiff was provided with the pleading requirements, the Court will recommend that no further leave to amend be granted as to Plaintiff's other claims.

## V.      Conclusion And Recommendation

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.      Defendants' motion to dismiss, filed June 24, 2011, be GRANTED in part and DENIED in part as stated herein;

2.      This action should proceed on Plaintiff's third amended complaint, filed June 9, 2011, against

    a.      Defendants Wenneker, Pazo, Tidwell, Chapman, Lopez, K. Todd, Metzen, and Garza for retaliation in violation of the First Amendment as stated herein;

    b.      Defendants Garza and Jones for excessive force in violation of the Eighth Amendment as stated herein;

3.      Plaintiff's other claims which failed to state a claim, as stated herein, be dismissed with prejudice;

4.      Plaintiff be granted twenty (20) days from the date of service of the district judge's order regarding these Findings and Recommendations in which to amend his request for relief;

5.      Plaintiff's remaining claims arising at KVSP be dismissed without prejudice to filing in a new, separate action; and

6.      Defendants R. Blevins, M. Robinson, S. Hanson, McDill, Skeen, Sherrit, Newby, D. Zanchi, Arellano, Watson, Genova, L. Garcia, G. Garcia, J. Ramos, S. Hopkins, M. Dunlop, S. Buentempo, J. L. Peterson, D. White, V. McLaughlin, J. Gutierrez, Whitlach, Grannis, Tarnoff, Tallerico, J. Acebedo, Stewart, Epperson, J. Hernandez, Ostrander, Campagna, M. D. Biter, E. Negre, Matthew Cate, D. Lee, R. Keldgord, John W. Riches, Dennis L. Beck, Lawrence J. O'Neill, E.

1    Flores, Kenneth Roost, D. Page, and T. S. Arlitz, be dismissed.

2    These Findings and Recommendations will be submitted to the United States District

3    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **thirty**

4    **(30) days** after being served with these Findings and Recommendations, the parties may file

5    written objections with the Court.  The document should be captioned "Objections to Magistrate

6    Judge's Findings and Recommendations."  The parties are advised that failure to file objections

7    within the specified time may waive the right to appeal the District Court's order.  *Martinez v.*

8    *Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

9    IT IS SO ORDERED.

10   **Dated:**   **December 19, 2011**            **/s/ Dennis L. Beck**
                                            UNITED STATES MAGISTRATE JUDGE